**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALFRED EMMANUEL CLARK,<br><br>Defendant. | 2:07-cr-0183-RLH-LRL<br><br>MOTION TO SUPPRESS (#20) |

**REPORT & RECOMMENDATION**

The defendant, Alfred Emmanuel Clark ("Clark"), is under indictment on two counts of Felon in Possession of a Firearm, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The matter before the court is Clark's Motion to Suppress Evidence Obtained in Violation of the Fifth and Fourth Amendments (#20), in which he contends that the handgun the Las Vegas Metropolitan Police Department ("LVMPD") seized from his person on September 1, 2006 should be suppressed as evidence. The government filed a response (#21) and a supplement (#22). Clark filed a reply (#24).

An evidentiary hearing was conducted on May 19, 2008. At the hearing, LVMPD Sergeant Cheryl Hooten and LVMPD Officer James W. Newcomb, II testified for the government. No witnesses testified on Clark's behalf. Having considered the motion, opposition, supplement, reply, and the testimony and other evidence offered at the evidentiary hearing, the court submits this Report and Recommendation.

**THE FACTS**

The court finds that the following facts have been established by a preponderance of the evidence. On September 1, 2006, at approximately 9:00 a.m., Laurie Jones was shot by her ex-husband, Lionell Jones, as she drove her car near the intersection of West Lone Mountain Road and North Tenaya Way in Las Vegas, Nevada. Laurie Jones made two frantic calls to 911. The first call occurred just

1 prior to the shooting and the second call occurred just after. After she had been wounded, Laurie Jones
2 told the dispatcher that her ex-husband had shot her and that she believed he was on his way to her
3 residence on Cathedral Canyon Court. Eye witnesses who called 911 described the suspect's vehicle
4 as a late 1990's green Ford Ranger or Dodge Dakota two (2)-door pickup truck. A partial license plate
5 number of the suspect's vehicle was also provided. He was described by Laurie Jones as a fifty-three
6 (53) year-old black male approximately 5'9" tall and weighing 165 pounds, and wearing a dark gray
7 t-shirt and long pants.

8 Officers were dispatched to Laurie Jones' address at 7517 Cathedral Canyon Court, Las Vegas,
9 Nevada. The residence is on a cul-de-sac with twelve (12) other residences. The officers established
10 a perimeter at the intersection of Enchanted Hills Court and Ambrose Mesa Street, the intersection of
11 Cobal Canyon Lane and Ambrose Mesa Street, and on North Buffalo Drive behind Cathedral Canyon
12 Court where it comes to a dead end. *See* Government Exhibit 1.

13 An LVMPD air unit informed the officers on the ground that a green pickup truck was parked
14 in the driveway of a residence on Cathedral Canyon Court two (2) houses east of Laurie Jones'
15 residence. *See id.* at B. Moments later, Sergeant Hooten and Officer Newcomb observed a silver four-
16 door sedan with untinted windows driven by a black male adult pulling out of the cul-de-sac. The
17 officers had received no information about it. They blocked its path and forced it to stop. They could
18 not see the occupant's clothing; nor could they observe his face clearly enough to discern his age.

19 The officers ordered the occupant out of the vehicle at gunpoint. It was the defendant, Alfred
20 Clark. As he was exiting the vehicle, Officer Newcomb immediately patted him down for weapons.
21 A 9 mm semi-automatic handgun was found in Clark's waistband. Clark told the officers that Laurie
22 Jones, his girlfriend, had informed him that she had been shot by her ex-husband and had asked him to
23 bring her gun from her home so that she might defend herself should Lionell Jones reappear. It became
24 apparent that Clark's clothing did not fit the description given by the witnesses, and that he did not
25 appear to be in his 50's. Clark's driver's license confirmed his identity, and Laurie Jones confirmed
26 his story via police radio. When the officers ran a records check on Clark, they determined that he was

registered as a convicted felon. Because the officers were still looking for Lionell Jones, they released Clark but impounded the handgun. They later determined that the handgun was registered to Laurie Jones.

## DISCUSSION

Clark contends that the stop and the search were unlawful because the officers conducting them lacked reasonable suspicion that he was engaged in criminal activity. Mot. (#20). Clark maintains that there were no objective factors indicating he was involved in criminal activity. *Id.* at 3, 4-6. Clark thus contends that all evidence, both tangible and testimonial, derived from the unlawful stop and search must be suppressed as tainted fruit of a Fourth Amendment violation. *Id.* at 6. *See generally Wong Sun v. United States*, 371 U.S. 471, 484 (1963). The government responds that reasonable suspicion was present under the totality of the circumstances. Opp'n (#21).

An investigative stop is justified if a law enforcement officer has reasonable suspicion based on objective factors to conclude that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Reasonable suspicion is based on all of the circumstances, including but not limited to, the officer's training and experience, the time of night, and the neighborhood. *United States v. Mattarolo*, 209 F.3d 1153, 1157 (9th Cir. 2000) (citations omitted) (citing *Terry*, 392 U.S. at 21). It is not a matter of hard certainties, but of probabilities. *United States v. Cortez*, 449 U.S. 411, 418 (1981). "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146 (1972) (citations omitted). "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Id.* at 145 (citation omitted).

A law enforcement officer may conduct a pat-down search for weapons during a limited detention if "a reasonably prudent man under the circumstances would be warranted in the belief that his safety or the safety of others was in danger." *United States v. Salas*, 879 F.2d 530, 535 (9th Cir.

3

1989) (quoting *Terry*, 392 U.S. at 27).  The aim of the limited search is "not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." *Williams*, 407 U.S. at 146 (citing *Terry*, 392 U.S. at 30).  The court must look to the totality of the circumstances to determine whether there was reasonable suspicion for a pat-down search.  *United States v. Prieto-Villa*, 910 F.2d 601, 605 (9th Cir. 1990) (citing *United States v. Sokolow*, 490 U.S. 1 (1989)).

        Here, the officers were involved in a rapidly developing, fluid situation in which they were attempting to locate and apprehend an armed man who had just shot a woman.  They had been told that the shooter may be returning to the victim's home on Cathedral Canyon Court, which was situated on a cul-de-sac.  When the officers gathered in the vicinity of the cul-de-sac they set up a perimeter such that, in the event the shooter had already returned to the home, he would be prevented from leaving the area.  Just then the officers were advised by the LVMPD air unit that a green pick-up truck matching the description of the suspect vehicle was parked in the driveway of a home just two doors from the victim's home.  Moments later a silver sedan driven by a black male adult pulled out of the cul-de-sac.  Because the officers could not rule out the possibility that the suspect had returned to the area and switched cars, Sgt. Hooten, a twelve (12)-year veteran of the LVMPD, drove her vehicle into the silver sedan's path, forcing it to stop.  At the same time Officer Newcomb, an eleven (11)-year police veteran, jumped from his patrol car with his weapon drawn and ordered the driver out of the silver sedan.  As Clark emerged, Officer Newcomb immediately frisked him, and found a handgun in his waistband.  Newcomb testified, "It all happened so fast.  We needed to stop the car. . . .  We didn't know who's who.  My main priority is to be sure he's not a threat. . . .  Within fifteen seconds, it became obvious he's not our suspect."  Clark told the officers his girlfriend had been shot, and radio communications with the victim confirmed that Clark was indeed her boyfriend and not the suspect.  Additionally, Clark's clothing did not fit the description given to the police, and he did not appear to be in his 50's.

        Under these circumstances, the court finds that the officers actions in stopping Clark's vehicle and frisking him were reasonable within the meaning of the Fourth Amendment.  Aware that a vehicle matching the suspect vehicle was parked in a driveway just two (2) doors from the victim's house, the

officers were suddenly confronted with a car leaving the very cul-de-sac where the victim lived. The officers could not immediately rule out the possibility that the driver was the suspect. Under the circumstances it would have been unreasonable, indeed irresponsible, for the police to allow the vehicle to leave merely because it was not a green pick-up truck. Moreover, because of the reasonable possibility that the driver was the suspect, and was therefore armed and extremely dangerous, the police were justified in conducting an immediate pat-down to ensure their own safety. The intrusion on Clark's privacy under these circumstances was minimal and was heavily outweighed by the officers' interest in their own safety and the immediate apprehension of an armed and dangerous individual. That Clark was not wearing the same color clothing described by the witnesses was not immediately dispositive of when the officers came to *know* that Clark was not the suspect, who could have changed clothes as well as vehicles. Nor was the fact that Clark did not look as old as the description given by witnesses immediately dispositive. Seasoned police officers know that descriptions given by witnesses involved in or witnessing traumatic events are notoriously unreliable. Moreover, Sgt. Hooten and Officer Newcomb had to act quickly and decisively to neutralize potential danger when they stopped the silver sedan. They did not have time to look carefully at Clark's face and agree that he did not look old enough to be the suspect. First they had to determine that he was not a threat. That being accomplished, as Officer Newcomb testified, it did not take them more than fifteen (15) seconds to conclude that Clark was not the suspect. This court therefore concludes that the officers acted reasonably and the frisk that led to the discovery of the handgun was justified under *Terry v. Ohio*.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

**RECOMMENDATION**

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that Clark's Motion to Suppress Evidence Obtained in Violation of the Fifth and Fourth Amendments (#20) should be denied.

DATED this 2nd day of June, 2008.

_____
**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**